# ATTACHMENT A

10/24/16

# SUMMONS

Attorney(s) ROBERT KENNY, PRO SE
Office Address 145 SHREWSBURY COURT
Town, State, Zip Code PENNINGTON, NJ 08534-5415
Telephone Number (609) 906-4248
Attorney(s) for Plaintiff ROBERT KENNY

ROBERT KENNY,

Plaintiff(s)

Vs.
SUSAN M. DENBO, RIDER UNIV.,/and the RIDER CHAPTER OF THE AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS

Defendant(s)

## Superior Court of New Jersey

Mercer COUNTY
LAW DIVISION

Docket No: MER-L-1641-12

## CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

Michele M. Mitchell, Esq.
Clerk of the Superior Court

DATED: October 20, 2016

Name of Defendant to Be Served: RIDER CHAPTER OF THE AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS

Address of Defendant to Be Served: C/O ART TAYLOR, PRESIDENT, SWEIGERT HALL, ROOM 305, RIDER UNIV. 2083 LAWRENCEVILLE ROAD, LAWRENCEVILLE, NJ 08648-3099

Robert Kenny, Plaintiff *Pro Se*
145 Shrewsbury Court
Pennington, New Jersey 08534-5415
Ph. – 609 906-4248
Fax – 609 964-1948

| | |
|---|---|
| ROBERT KENNY,<br>Plaintiff,<br>-vs. -<br><br>SUSAN M. DENBO, RIDER UNIVERSITY and THE RIDER UNIVERSITY CHAPTER OF THE AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS,<br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MERCER COUNTY<br><br>DOCKET NO. MER L-1641-12<br>CIVIL ACTION<br><br>FOURTH AMENDED COMPLAINT |

RECEIVED
OCT 20 2016
CIVIL CASE MANAGEMENT

TO: The Superior Court of New Jersey, Law Division

Plaintiff, Robert Kenny, residing at 145 Shrewsbury Court, Pennington, New Jersey 08534-5415 in the County of Mercer, by way of Complaint against Defendants says that:

## THE PARTIES AND JURISDICTION

1. Defendant Rider University ("Rider" or the "University") is a non-profit corporation organized in New Jersey with its principal place of business in Lawrenceville, Mercer County, New Jersey.

2. Susan M. Denbo, ("Defendant Denbo") is a Professor of Legal Studies and Business Ethics at Rider and a resident of the State of New Jersey.

3. The Rider University Chapter of the American Association of University Professors ("the Union Local") is the collective bargaining unit representing both fulltime and adjunct professor

faculty at Rider.

4. Plaintiff was an Adjunct Professor at Rider for 16 years.

5. The Court has concurrent jurisdiction with the National Labor Relations Board of the accusation of unfair representation against the Union Local under *Vaca et al. v. Sipes, Administrator*, 386 U.S. 171, 188; 87 S. Ct. 903, 916 (1967).

## THE FACTS

6. As of 2012, Plaintiff had been teaching at Rider for over 16 years; first in the accounting department and for the last 10 years in the business law department.

7. Plaintiff has been an adjunct professor at Seton Hall School of Law, in the past as well as Mercer County Community College, Middlesex County Community College, Sanda University, (Shanghai, Peoples Republic of China), and The College of New Jersey.

8. In addition to the foregoing, Plaintiff until January 1, 2014 conducted a practice in, tax audit defense, business law, and estate planning.

9. Up until January 25, 2012, Plaintiff had always conducted himself with honesty and fidelity, and had never been guilty of any misconduct or malpractice. Plaintiff came to enjoy and did enjoy a good name and reputation in the community as an attorney at law and adjunct professor.

10. Ira B. Sprotzer, Esq. ("Department Chair Sprotzer") is Department Chair of the Marketing, Advertising and Legal Studies department ("business law department") at Rider.

11. On November 12, 2009, the Department Chair Sprotzer presented a model syllabus for the PMBA (Professional Masters of Business Administration) 8290 course to the Academic

Policy Committee of Rider's College of Business Administration.

12. In seeking course approval, Department Chair Sprotzer presented said model syllabus without attribution or copyright notice or intellectual property claim on behalf of any individual department member.

13. With exception only of the student assignments, said departmental model syllabus is nearly identical to the syllabus ("the Denbo syllabus") which Defendant Denbo now claims was used without her permission.

14. Subsequent to bringing this action, in or about July, 2014, the University ordered its department chairs to gather syllabi from the faculty for distribution to replacement faculty in the event of a strike thereby taking the position that the University owned the syllabi and owned the courses once they were approved by the Academic Policy Committee.

15. In or about the fall of 2011, Defendant Denbo uploaded the Denbo syllabus in electronic format to Rider's Blackboard Learning, a computerized course administration system ("Blackboard") along with student assignments, and reference resources, some of which were self-composed ("student resources").

16. The Blackboard system had a "permissions" subsystem which allowed Defendant Denbo to control who had access to the syllabus and student resources.

17. Defendant Denbo published and made available all her course documents for download, copying and even alteration of the online copy to some 10,000 Blackboard students, faculty, and staff users including Plaintiff. (This Court's findings of fact, 1T 5, lns.6-14).

18. Neither the Denbo syllabus nor the department's model syllabus contains a copyright notice or reservation of rights.

19. Sometime in the fall of 2011, Department Chair Sprotzer solicited a copy of the Denbo

Syllabus from Defendant Denbo for the express purpose of sharing it with the adjunct professor who would be teaching the course.

20. Defendant Denbo furnished a copy of the syllabus for this express purpose.

21. Plaintiff was subsequently asked to teach PMBA 8290 course for the spring, 2012 term.

22. On October 12, 2011, Plaintiff emailed Department Chair Sprotzer and asked him to share his syllabus.

23. Department Chair Sprotzer answered by email (1) that he did in fact have one; and (2) that he had only a paper (or "hard") copy that he would leave with his secretary.

24. Both said email statements were untrue.

25. In truth, Department Chair Sprotzer had only the Denbo syllabus with Defendant. Denbo's name on it.

26. In truth, Department Chair Sprotzer had both electronic and paper copies of the syllabus.

27. Department Chair Sprotzer's secretary volunteered to give Plaintiff both electronic and paper copies to use in teaching the course as the Chair had done at least five times in the past for first-time courses.

28. Said past habit and practice was that for 16 years, whenever Plaintiff would teach a course for the first time, the department chair would furnish him, without restriction, either his own syllabus or another department member's syllabus for that course. All such syllabi had the department chair's or another professor's name on them.

29. Said habit and practice is a convenience to the department chair. The University and faculty have a need for continuity and consistency in the courses so that subsequent courses in the curriculum can "build" on a given knowledge base. Rather than go over the course requirements with each adjunct professor, it is more convenient for the department chair to give

the adjunct the syllabus from the preceding term.

30. Said habit and practice included at least one instance of copying Defendant Denbo's student assignment for the undergraduate contracts course and copying Prof.Goldberg's syllabus for the BUS 300 Course.

31. Even when Department Chair Sprotzer furnished his own syllabus, it had generally been derived from someone else's in the department. If any individual permissions from the author of those syllabi were obtained, Department Chair Sprotzer must have obtained them. At no time did Plaintiff ever have to obtain separate permission from the author.

32. Prior to January, 2012 Department Chair Sprotzer had never asked Plaintiff or any adjunct professor to seek permission from the author when he gave an adjunct professor a syllabus.

33. In giving the syllabus to Plaintiff without restriction, Defendant Denbo, the University, the business law department and Department Chair Sprotzer gave consent to Plaintiff's use of the syllabus.

34. In earlier years, the identical procedure was followed in the accounting department at Rider where the department chair would furnish syllabi to Plaintiff for first-time courses without seeking separate permission from the author.

35. When the business law department awarded Plaintiff Priority Adjunct Professor status (which status confers benefits such as medical insurance) in 2002, the recommendation signed by members of the Department including Defendants Denbo and Sprotzer noted with approval this past habit and practice of "borrowing" Prof. Denbo's materials in the contract course.

36. Said habit and practice for first-time courses was also followed on every campus on which Plaintiff has taught in the last 20 years.

37. Prior to January 2012 and since, neither the Plaintiff nor Department Head Sprotzer has ever seen a syllabus posted with a copyright notice, or reservation of rights on the Rider campus or any other campus.

38. Prior to January 2012 and since, neither Plaintiff, nor Defendant Denbo, nor Department Head Sprotzer has ever seen a syllabus posted with an attribution or acknowledgement of authorship on the Rider campus or any other campus.

39. Accordingly, on January 14, 2012 Plaintiff posted to the aforementioned Blackboard system, an electronic copy of the syllabus Defendant Denbo used the previous term after making some eight alterations to adapt it to his class.

40. On January 20, 2012, the week before the start of the spring term, Plaintiff then called Defendant Denbo to ask to use some of her student resources, ask questions on how she conducted the course and to inform her that Plaintiff had a video placed in Rider's library in which she may have an interest.

41. Plaintiff never received a return call for said call.

42. Defendant Denbo never called Plaintiff and told him not to use the syllabus.

43. On January 23, 2012, the first day of class for the spring term, Plaintiff informed his class that he had used Prof. Denbo's syllabus and that it would be changing. The syllabus still referred to Prof. Denbo's resources and assignments in order to give the students an idea of the volume of work that would be required though Plaintiff had not posted any of them to his Blackboard site so students could not access them.

44. After this first class, Plaintiff received a series of emails from Prof. Denbo to which he responded. Specifically, on January 23, 2012, again on January 25, 2012, at 4:21 PM, , and still again on January 25, 2012 at 4:49 PM, Plaintiff sent emails assuring Defendant Denbo that her

student resource materials had not been used.

45. Starting on January 25, 2012 at 9:18 AM, Defendant Denbo sent out a series of email blasts" ("the complaint emails") falsely accusing Plaintiff of unauthorized access and use of her student resources and of her syllabus. She said she was "enraged" and made ready "to explode" by this "EXTREME unethical behavior" [capitalization in the original] and stating that Plaintiff should never be allowed to teach at Rider again.

46. One of said complaint emails said Plaintiff's alleged use of her student assignments would prevent her from ever using these assignments again.

47. Later Defendant Denbo certified she changed the assignments every time she taught the course anyway. Therefore there was no explanation of how she was harmed by Plaintiff's alleged use of her assignments. Again, Plaintiff never used her assignments and told her this repeatedly.

48. Plaintiff never used her student resources and never even opened them or looked at them.

49. Though Plaintiff did nothing wrong, to try to calm Defendant Denbo, and out of an abundance of deference and because defendant Denbo was upset at what Plaintiff did, even though he proceeded as he always had when teaching a existing course, and to his knowledge, all adjunct professors had always done at Rider and every other college/university where Plaintiff had taught, Plaintiff apologized to Defendant Denbo and posted a new syllabus as soon as possible.

50. In an email to Defendant Denbo dated the evening of January 23, 2012 Department Chair Sprotzer responded to Defendant Denbo's student resource allegation by saying that alleged use of her <u>resources</u> was unacceptable, but he had given the <u>syllabus</u> to Plaintiff to use, telling Plaintiff to call her if he had any questions.

51. Said email was not disclosed in the labor grievance that followed.

52. The same evening on January 23, 2012, Department Chair Sprotzer sent an email to Plaintiff this time falsely saying that Defendant Denbo had not given permission to use her syllabus even though he followed it with an email to her (of paragraph 50) saying he had given her copy of the syllabus to Plaintiff to use.

53. Said email was disclosed in the labor grievance that followed.

54. Importantly, said email evidences that Defendant Denbo knew as of January 23, 2012 she had given permission for the use of her syllabus and that the syllabus had been given to Plaintiff.

55. Plaintiff's Blackboard web page with syllabus and resources was available 24/7 during this time period. It showed Defendant Denbo's student resources had not been used.

56. Defendant Denbo never checked Plaintiff's Blackboard page before she made her accusations.

57. On January 25, 2012 Prof. Denbo distributed an email to five administrative officials and faculty expressing outrage and falsely accusing him (1) of having unauthorized access to her syllabus and (2) using or intending to distribute her assignments and resources to students without permission.

58. Said emails were issued after the perceived problem had been solved, the syllabus withdrawn and apologies made again, to try to pacify and calm Defendant Denbo.

59. On January 24, 2012, Shaun Holland of Rider's OIT (Office of Instructional Technology) sent an email to Defendant Denbo explaining the results of his research on how Defendant Denbo's course syllabus and resources became generally available on the Blackboard system. In paragraph five thereof he concludes that the most likely scenario was she herself had elected general distribution.

60. Importantly, this email made Defendant Denbo aware by Jan. 24, 2012, that her allegations about Plaintiff "gaining access" to her course materials without her permission were false, since her materials were available to any one of 10,000 students or employees of Rider University, but this important email was not disclosed to Plaintiff in the labor grievance that followed.

61. In the aforementioned January 25, 2012 undisclosed email to the Dean et al., Defendant Denbo inconsistently says that a "glitch" in the Blackboard instead caused general distribution of her syllabus and resources.

62. On, January 31, 2012 Plaintiff was invited to meet with Department Chair Sprotzer and Larry Newman, Dean of Rider's College of Business Administration.

63. Plaintiff was told the subject of the meeting was "course resource issues".

64. In response to Plaintiff's inquiry about whether the subject of the meeting was disciplinary, Dean Newman sent Plaintiff an email saying it was "just fact-finding".

65. Said "fact finding" email was not disclosed in the labor grievance that followed.

66. Believing that it was not a disciplinary hearing, Plaintiff did not prepare for a disciplinary hearing, nor notify the Union Local to ask that a Union Local representative accompany him.

67. The discussion at said meeting which took place February 7, 2012, related almost exclusively to the student resources not the syllabus. Dean Newman informed Plaintiff that Defendant Denbo had not selected her permissions but that the default position under Blackboard was open so the Blackboard system had done it for her. Plaintiff was astonished to hear this and this clearly shows that Plaintiff did not improperly access Defendant Denbo's course materials.

68. Subsequent to said meeting, Dean Newman sent a letter dated February 29, 2012 to Plaintiff imposing disciplinary action of a two-term suspension from teaching with the letter

being placed in his personnel file for serious unprofessional conduct i.e. "unauthorized use of Professor Denbo's syllabus" (not student resources), despite Department Chair Sprotzer giving Plaintiff the syllabus to use. In this manner Dean Newman quietly dropped the student resource allegation because it was obviously false.

69. At oral argument herein on October 26, 2012, (25:5-17) Defendants' counsel has suggested that unauthorized use of the syllabus was as an absolute, strict liability, offense punishable regardless of the innocent intent of the user.

70. If Defendant Denbo really had told Department Chair Sprotzer, not to share her syllabus, then, but for Department Chair Sprotzer's giving the syllabus to Plaintiff to use, there could not have been any violation of any rights Defendant Denbo had in her syllabus.

71. If there was any strict-liability violation therefore, it arose exclusively with Department Chair Sprotzer, as Plaintiff was only able to use it because Department Chair Sprotzer had given it to Plaintiff to use, yet neither Department Chair Sprotzer nor his secretary was disciplined for their role in the syllabus-use offense.

72. After receiving said discipline letter, Plaintiff called the Union Local, and was told that the Union Local would defend him against the claims and punishment.

73. Then the Union Local only grieved the "level of discipline" imposed on Plaintiff.

74. In response to a request from the University, the Union Local agreed to try to get the grievance resolved before September, 2012 which is when the students would be returning from summer vacation.

75. The Union Local did not protest the subterfuge of Dean Newman as set forth in paragraphs 63-68 in inviting Plaintiff to a "fact finding" meeting the University now claimed was Plaintiff's "Stage I" disciplinary hearing under the Collective Bargaining Agreement without

advising him he was entitled to Union Local representation.

76. After the Union Local grieved the discipline and the process was ongoing, Defendant Denbo complained to the Union Local President that she should have been consulted before the Union Local agreed to represent Plaintiff.

77. Responding to Defendant Denbo's concerns, the Union Local Grievance Officer, Dr. Jeffrey Halpern, acknowledged in writing that they were navigating the conflict between bargaining unit members saying "Let me add that cases that touch on more than one bargaining unit member whose interests are or may appear to be in conflict are the most difficult ones that any Union Local has to deal with".

78. Dr. Halpern also stated "Rather this case is about whether or not, given the totality of the facts the level of discipline was appropriate." There was no mention of exonerating Plaintiff of wrongdoing and this ignores that the Union Local had promised to represent Plaintiff, which first and foremost, to Plaintiff's understanding, meant defending him against the false charges.

79. Grievance Officer Halpern refused to furnish Plaintiff a copy of this email. It was not disclosed until March of 2015 by the University in response to discovery.

80. Thinking that Union Local Counsel Katz represented him, Plaintiff disclosed privileged confidential information to Katz. It was only long after the grievance that Grievance Officer Halpern told him that Katz was the Union Local's attorney and not his.

81. Also not disclosed until June 12, 2015 was Defendant Denbo's certification of Grievance Officer Halpern's admission that the Union Local "only contested the level of penalty administered to Plaintiff by the University".

82. The Union Local's counsel did not inform Plaintiff of the conflict of interest they had between Plaintiff, an adjunct professor and Defendant Denbo, a tenured full professor.

83. Nor did their counsel ask for written waiver of said conflict in accordance with the Rules of Professional Conduct 1.7.

84. During the pendency of the grievance proceedings, the Union Local requested all documents associated with Rider's investigation of Defendant Denbo's allegations.

85. Four documents were not disclosed in response to said request three of which were later revealed after this suit was filed and only in response to the Honorable Darlene J. Pereksta's order. The fourth cannot be located and former dean Larry Newman certified he does not remember it.

86. The first undisclosed document was the Shaun Holland email of paragraph 59 to Defendant Denbo explaining that she herself had elected general distribution of her materials.

87. The second undisclosed document contradicts the first – the email from Defendant Denbo of paragraph 61 saying the general distribution of her resources was a default in Blackboard.

88. The third undisclosed document was the email of paragraph 50 from Department Chair Sprotzer informing Defendant Denbo that he had given the Denbo syllabus to Plaintiff to use.

89. This contradicts the email of paragraph 52 sent the same evening which <u>was</u> disclosed during the grievance saying there was no permission.

90. During the pendency of the grievance, the Union Local requested access to Carol Kondrach, in Rider's OIT (Office of Instructional Technology) Department for an explanation of how the Blackboard system operated.

91. The University blocked any access to Carol Kondrach prior to the arbitration. The Union Local's counsel said that this was a departure from past practice in such cases and the past practice was that anyone not directly involved in the discipline was accessible prior to the hearing.

92. The Union Local acquiesced in said departure and made no investigation of whether Defendant Denbo's assertion she did not elect general distribution of her materials was true.

93. Though Plaintiff protested at the time, the Union Local did not request the appearance of OIT employee, Carol Kondrach at the hearing.

94. This Court has since found that Defendant Denbo did in fact control the distribution of her materials. (This Court's findings of fact, 1T 5, lns.6-14).

95. At the grievance hearing June 14, 2012, the arbitrator examined no evidence took no testimony and recommended his settlement after the opening statements.

96. The Union Local and its counsel said they would not contest the discipline any longer and Plaintiff had no choice but to accept the settlement agreement ("settlement agreement").

97. On June 14, 2012, Plaintiff accepted sanctions from the University without any "admission of wrongdoing" in settlement of the collective bargaining grievance.

98. In the First Amended Complaint (paragraph 45 therein) in this cause, Plaintiff essentially alleged on information and belief that there was a missing letter that had not yet been disclosed that initiated Defendant Denbo's complaint against Plaintiff.

99. At the October 16, 2012 motion hearing Defendant's counsel attacked Plaintiff for insinuating there were missing emails essentially accusing Plaintiff of a fraud on the Court and that Plaintiff had made the allegation "from whole cloth".

100. At said hearing Defendant's counsel and the University represented there were no other emails.

101. Not content with this representation, the Honorable Darlene J. Pereska ordered a certification directly from Defendant Denbo.

102. It was only after Defendant Denbo's supplemental certification was submitted that

the three undisclosed documents came to light, months after the grievance was settled.

103. The grievance was settled without disclosure of said documents.

104. During the grievance, it was undisputed Defendant Denbo permitted the syllabus to be presented as the department's model syllabus without attribution when the course was approved.

105. During the grievance proceeding, Defendant Denbo asserted that she and Department Chair Sprotzer had a "colloquy" on the restrictions to be placed on Plaintiff's use of the syllabus.

106. Since Defendants Denbo and Sprotzer's depositions on June 12, 2015 said story is now inoperative. There was no colloquy. They have testified that at most, Defendant Denbo may have told Department Chair Sprotzer not to give an electronic copy to Plaintiff and that, in any event, Department Chair Sprotzer never told that to his secretary.

107. During the grievance, the Union Local and their counsel did not raise the issue of whether Defendant Denbo had effectively transferred her intellectual property rights in the syllabus (or at least a license to use) to the business law department. Instead of raising this defense on Plaintiff's behalf, a recently disclosed email communication shows that Grievance Officer Halpern deliberately waited until after Plaintiff's case was settled to raise this issue.

108. After the University was caught concealing emails, and the Court found that Defendant Denbo herself had publicized her syllabus and materials contrary to what had been presented during the grievance, Plaintiff repeatedly requested that the Union Local set aside the settlement agreement on the grounds of fraud.

109. In response to a phone call from Plaintiff's then attorney Steven Blader, Esq. about rescinding the settlement agreement, Union Local Counsel James Katz said that he knew

(although Plaintiff did not) that Defendant Denbo had disclosed her own syllabus and resources on the Blackboard permission system. He was unable to explain however how he could have recommended that Plaintiff sign an apology and the settlement agreement without disclosing that to Plaintiff.

110. The Union Local did not respond to all but the first of Plaintiff's entreatics to rescind the settlement agreement based on Defendant's fraud and/or equitable fraud (concealing emails, Department Chair Sprotzer's fraudulent email and blocking contact to OIT employee Carol Kondrach).

111. In contrast to its treatment of Defendant Denbo during the pendency of the grievance, the Union Local President has declined to grant an audience to Plaintiff to discuss the issues of rescinding the settlement agreement and breach of duty of fair representation. He has referred all inquiries back to Union Local Counsel James Katz, Esq.

112. Since Plaintiff's suspension ended in the spring of 2013, for the first time in sixteen years, the University has had no courses available for Plaintiff to teach effectively granting Defendant Denbo's wish that he never be allowed to teach at Rider again.

113. After the University imposed the two-semester suspension and subsequently offered no adjunct assignments to Plaintiff, he applied for unemployment compensation. The University told the Unemployment Commission that Plaintiff voluntarily submitted to discipline with no mention of the fact that it was "without admission of wrongdoing" as specified in paragraph 97.

114. Plaintiff was denied unemployment compensation because of misconduct connected with work.

**COUNT I**

**LIBEL**

115. Prof. Denbo's email statements and complaint were false and defamatory and were published maliciously and with knowledge of their falsity or with reckless disregard to whether they were true or false, and as a direct and proximate result Plaintiff's professional reputation has been greatly injured, Plaintiff suffered great mental anguish, and Plaintiff has been deprived of profits which would have otherwise accrued in the practice of teaching.

116. Department Chair Sprotzer also knew the unauthorized use of syllabus allegation of the emails was false and that his email of Paragraph 53 denying that Defendant Denbo gave permission for the use of her syllabus was willfully false.

117. Such conduct constitutes libel by the University under *respondeat superior* since the false and defamatory statements were published in writing.

118. In committing the above acts, said Defendants acted with malice towards Plaintiff, and Plaintiff is therefore entitled to punitive damages in sufficient amount as will adequately punish Defendants for their willful and malicious conduct.

**COUNT II**

**FRAUD AND EQUITABLE FRAUD**

119. Defendant Denbo's affirmative misrepresentation about her role in electing general distribution of her materials and the University's concealment of the documents during the settlement of the grievance that they had a duty to disclose and the University's blocking of access to a material witness constitute misrepresentations of material facts that induced Plaintiff to enter the settlement agreement.

120. Plaintiff justifiably relied on said misrepresentations

121. Had the University or the Union Local Counsel James Katz disclosed that Defendant Denbo was responsible for releasing her own materials, Plaintiff would never have signed the settlement agreement.

**COUNT III**

**BREACH OF CONTRACT**

122. The settlement agreement provides for no admission of wrongdoing on Plaintiff's part.

123. Communicating to the unemployment authorities that Plaintiff was suspended for misconduct connected with work contravenes said provision of the settlement agreement.

**COUNT IV**

**UNION LOCAL'S DENIAL OF FAIR REPRESENTATION**

124. As Plaintiff's exclusive representative in the grievance proceedings under § 301 of the federal Labor Management Relations Act (29 U.S.C. § 185), the Union Local had an obligation to process his grievance in good faith and avoid processing the grievance in an arbitrary or discriminatory or dishonest or perfunctory manner ("duty of fair representation").

125. Instead of just grieving the "level of discipline", the Union Local **should have** grieved: 1) University's deception in literally surprising Plaintiff with a disciplinary hearing; 2) the University's proceeding without first asking Plaintiff if he wished to have representation; 3) the University not mentioning the use of the syllabus, and questioning Plaintiff about his accessing the course materials, then prosecuting Plaintiff, "for serious unprofessional conduct", i.e. "unauthorized use of Professor Denbo's syllabus"; 4) the University concealing that it was Defendant Denbo, who made her materials available to the 10,000 students and faculty; 5)

Department Chair Sprotzer's fraudulent concealment of the fact that Defendant Denbo had given permission to use her syllabus; 6) or in the alternative, the University ignoring that Plaintiff was not told Defendant Denbo had not authorized anyone to use her syllabus, and finally, 7) that the University did not dispute that it was the habit and custom for new instructors for an existing course to have use of a prior syllabus. Said failures constitute breaches of said duty of fair representation.

126. The Union Local's refusal to investigate, discover and present the evidence of Defendant Denbo's and Sprotzer's false representations about disclosure of Denbo's materials, and permission to use them constitutes a breach of this duty of fair representation.

127. The Union Local's not insisting on interviewing OIT employee Carol Kondrach in advance of the arbitration hearing constitutes a departure from past such cases and discriminatory treatment of Plaintiff and constitutes a breach of this duty of fair representation.

128. The Union Local president providing an audience for Defendant Denbo's concerns during the pendency of the proceedings was a conflict of interest, as at that time, the Union Local was representing Plaintiff, not Defendant Denbo; Plaintiff was adverse to Defendant Denbo.

129. The Union Local's secret representation to Defendant Denbo that it would limit its representation of Plaintiff to reducing the level of discipline was in bad faith and a flagrant breach of this duty of fair representation.

130. The Union Local's granting of an audience to Defendant Denbo during the pendency of the grievance proceedings while ignoring communications from Plaintiff on voiding the settlement agreement constitutes additional discrimination and constitutes breach of said duty of fair representation.

131. As Plaintiff's exclusive representative in the grievance proceedings under § 301 of the federal Labor Management Relations Act, the Union Local may not compromise the interests of the grievant in favor of an advantage to be had in the collective bargaining process even if it benefits the larger group.

132. The Union Local's deliberate decision to forestall discussion of the model syllabus ownership issue until after the grievance was settled is just such an unlawful trade-off and constitutes a breach of said duty of fair representation.

133. The negligent conduct of Union Local Counsel James Katz as an attorney and agent for the Union Local, including not disclosing his and the Union Local's conflict of interest, and his compromised representation of the Plaintiff are all acts attributable to the Union Local and the aforesaid conduct constitutes a breach of said duty of fair representation.

134. Union Local Counsel James Katz failure to tell Plaintiff that Defendant Denbo disclosed her own resources and advising Plaintiff to sign a settlement agreement and apology constitutes a breach of said duty of fair representation by the Union Local.

WHEREFORE, Plaintiff Robert Kenny demands judgment against Susan M. Denbo, the Union Local and/or Rider University for compensatory, consequential and punitive damages, prejudgment and post-judgment interest, costs of suit, all attorneys' fees; for rescission of the settlement agreement, for disallowed Unemployment Compensation, and any other relief the court deems equitable or proper.

Dated: 10-20-2016

Respectfully submitted,

S/ [signature]

**Robert Kenny, Plaintiff *Pro Se***
**145 Shrewsbury Court**
**Pennington, New Jersey 08534-5415**

**Ph. – 609 906-4248**
**Fax – 609 964-1948**

**CERTIFICATION OF NO OTHER ACTIONS**

Pursuant to R. 4:5-1(b)(2), it is hereby stated that the matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding to the best of our knowledge or belief. Also, to the best of my belief, no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this pleading, I know of no other parties that should be joined in the above action. In addition, we recognize the continuing obligation of each party to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

Dated: 10-20-2016 /s/ Robert Kenny

**Robert Kenny, Plaintiff *Pro Se***
**145 Shrewsbury Court**
**Pennington, New Jersey 08534-5415**
**Ph. – 609 906-4248**
**Fax – 609 964-1948**

**JURY DEMAND**

The Plaintiff, Robert Kenny, hereby demands trial by a jury on all of the triable issues of this complaint, pursuant to R. 1:8-2(b) and 4:35-1(a).

Dated: 10-20-2016 /s/

**Robert Kenny, Plaintiff *Pro Se***
**145 Shrewsbury Court**
**Pennington, New Jersey 08534-5415**
**Ph. – 609 906-4248**
**Fax – 609 964-1948**

# ATTACHMENT B

ROBERT KENNY,

Plaintiff

vs

SUSAN M. DENBO, RIDER UNIVERSITY and THE RIDER UNIVERSITY CHAPTER OF THE AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS,

Defendant

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: MERCER COUNTY

Docket Number
MER-L-1641-12

**Person to be served** (Name & Address):
**Rider Chapter of The American Association of University Professors c/o Art Taylor, President, Sweighert Hall, Room 305, Rider University | 2083 Lawrenceville Road. Lawrenceville. NJ 08648**

## AFFIDAVIT OF SERVICE
(For Use by Private Service)

**Attorney:**
Robert Kenny - Pro Se
145 Shrewsbury Ct Pennington,, NJ 08534

Cost of Service pursuant to R. 4:4-3 (c)
$ 75.00

**Papers Served:** Civil Action Summons; Fourth Amended Complaint

**Service Data:**
Served Successfully x Not Served ____ Date: 10/24/2016 Time: 2:25 PM

___ Delivered a copy to him / her personally

___ Left a copy with a competent household member over 14 years of age residing therein (indicate name & relationship at right)

x Left a copy with a person authorized to accept service, e.g., managing agent, registered agent, etc.
(Indicate name & official title at right)

Name of Person Served and relationship / title:

**Heather Konstan / Accounting Assistant**
**Rule 4:4-4(a)(6)**

**Actual Place of Service:** 2083 Lawrenceville Road, Lawrenceville, NJ 08648 (Sweighert Hall, Business Administration Building # 350)

**Description of Person Accepting Service:**

Sex: Female Age: 22 - 35 Yrs. Height: 5' 4" - 5' 8" Weight: 100-130 Lbs.
Skin Color: White Hair Color: Brown

12092

**Unserved:**
( ) Defendant is unknown at the address furnished by the attorney
( ) All reasonable inquires suggest defendant moved to an undetermined address
( ) No such street in municipality
( ) No response on: ________ Date ________ Time ________ Date ________ Time ________
________ Date ________ Time ________ Date ________ Time ________

Comments or Remarks:

**Server Data:**

Subscribed and Sworn to me this 27th day of October, 2016

[signature]
Name of Notary / Commission expiration

CARMEN I. MOLINA
NOTARY PUBLIC OF NEW JERSEY
ID # 2442741
My Commission Expires 2/6/2019

I, **Ted Cordasco**, was at the time of service a competent adult not having a direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

[signature] Date 10/28/2016