NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT KENNY,<br><br>        Plaintiff,<br><br>   v.<br><br>SUSAN M. DENBO, RIDER UNIVERSITY, and THE RIDER UNIVERSITY CHAPTER OF THE AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS,<br><br>        Defendants. | Civ. No. 16-8578<br><br>**OPINION** |

THOMPSON, U.S.D.J.

       This matter comes before the Court upon motions for summary judgment by each party. The motion by Defendant Rider University Chapter of the American Association of University Professors ("Union") (ECF No. 154) is opposed by Plaintiff (ECF No. 158). The motion by Defendants Rider University ("University") and Susan M. Denbo ("Denbo") (collectively with the Union, "Defendants") (ECF No. 156) is opposed by Plaintiff (ECF No. 161). The motion by Plaintiff Robert Kenny ("Plaintiff") (ECF Nos. 155, 157) is opposed by the Union (ECF No. 160), and by the University and Denbo (ECF No. 162). Plaintiff moved to amend his original Motion for Partial Summary Judgment, rescind the memorandum attached to Docket Number 155 and replace it with the brief at Docket Number 157-1. (ECF No. 157). This motion is unopposed and will be granted.

       The Court has issued the opinion below based upon the written submissions and oral argument conducted on April 24, 2017. For the reasons stated herein, Plaintiff's motion for

summary judgment will be denied and Defendants' motions for summary judgment will be granted.

## BACKGROUND

This case centers on an aborted arbitration and resulting settlement between Plaintiff, Union, and the University regarding Plaintiff's alleged plagiarism of Professor Denbo's syllabus. At the time of the events in question, Plaintiff was an adjunct professor at the University and had been there for about fifteen years. Plaintiff was asked to teach a core course, which was developed by Defendant Denbo, while Denbo was on sabbatical. Plaintiff accepted the assignment and asked Department Chair Ira Sprotzer for a model syllabus for the course. Sprotzer offered a hard copy of the syllabus and Plaintiff obtained both a hard copy and an electronic copy of the syllabus from Sprotzer's assistant on or about October 20, 2011. (University and Denbo's Statement of Material Facts, ¶¶ 27–31). The syllabus was developed and written by Denbo, and had Denbo's name on it. Plaintiff changed various basic items on the syllabus, e.g. the professor's name, time of the course, and type of exam. The Friday before classes started, January 20, 2012, Plaintiff e-mailed Denbo to ask if he could use Denbo's course materials. Denbo refused him permission and sent e-mails to Chair Sprotzer, Larry Newman (then Dean of College of Business Administration), John Farrell (then Assistant Dean for Graduate and Professional Programs), James Castagnera (then Associate Provost and Associate General Counsel for Academic Affairs), and other administrators and professors expressing her extreme displeasure that Plaintiff had used her syllabus almost verbatim.

The University proceeded to discipline Plaintiff by suspending him for two semesters. That decision was appealed to the Provost, who affirmed it. The Union then grieved that discipline and it went to arbitration. After the University's opening statement and partway into

the Union's, the arbitrator interrupted the Union lawyer and called all counsel to sidebar. The arbitrator advised counsel that he was set on Plaintiff's receiving some sort of discipline. The Union lawyer then advised Plaintiff that it might be wise to settle the case. The matter settled with Plaintiff's receiving a suspension from teaching for the summer and fall semesters of 2012, but with no admission of wrongdoing, and with the discipline to be removed from his record after December 2012. Plaintiff signed the consent to settlement and agreed to send an apology to Defendant Denbo.

Plaintiff alleges that during the University and Provost's proceedings, Chair Sprotzer and Defendant Denbo concealed the information that Denbo had provided Sprotzer with her syllabus to give to the substitute professor, and Chair Sprotzer provided the syllabus to Plaintiff. Plaintiff also alleges that Defendant Denbo defamed Plaintiff by sending e-mails to faculty and administrators alleging that he had engaged in "EXTREME unethical behavior." (*See* Defendants University and Denbo Statement of Facts ¶¶ 66–67, ECF No. 156-1; *see also id.* ¶¶ 49–65). Plaintiff further alleges that the University breached the settlement agreement with Plaintiff by informing the New Jersey Department of Labor Unemployment Insurance Office that he was not teaching in the fall of 2012 "as part of a resolution of a disciplinary matter." (*Id.* Ex. J). Lastly, Plaintiff alleges that the Union breached its duty of fair representation of him by inadequately representing him at the arbitration, improperly forcing him into settling the case, and concealing its conflict of interest between him, the Union as a whole, and Defendant Denbo, who is also a member of the Union.

Plaintiff filed this lawsuit against the University and Professor Denbo in the New Jersey state court in July 2012. It was litigated for years until October 2016 when Plaintiff amended the

complaint to include allegations against the Union under the LMRA. At that point, the Union removed the lawsuit to this Court.

The Union removed this action from state court on November 17, 2016. (ECF No. 1). The Union then moved to dismiss the claim against it as filed out of time, or in the alternative, for failure to state a claim. (ECF No. 8). This Court denied that motion on January 24, 2017. (ECF No. 32). Since then, the parties have completed additional discovery, including supplementary depositions of Plaintiff and of Grievance Officer Halpern, and production of e-mails by Attorney Steven Blader. (*See* Union's Ex. 1 and 2, ECF No. 154; Pl.'s Opp'n to Union's Motion at 6–7, ECF No. 158).

The Union has moved for summary judgment on Count IV, breach of the duty of fair representation, the only claim against it. The University and Denbo have moved for summary judgment on Counts I through III, the three counts against them. Plaintiff has moved for partial summary judgment. These motions are presently before the Court.

## **LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). In resolving a motion for summary judgment, a district court

considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits." *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## ANALYSIS

**I.     Defendant Union's Motion for Summary Judgment**

The parties agree that the statute of limitations on this claim is 6 months, and the relevant complaint was filed on September 1, 2015.[1] The controversy over the syllabus took place at the end of January 2012. The discipline was imposed by the end of February 2012. The Union grieved the discipline and the matter went to arbitration and settled in June 2012. Plaintiff filed his first complaint, pro se, challenging that settlement and suing the University and Denbo in July 2012 in state court. Plaintiff learned in September 2012 that the Union and Denbo had communicated about his case, though the Union did not provide those communications to Plaintiff. Ultimately, Plaintiff sought the consultancy of Attorney Steven Blader in April through June 2014 and was informed that "the union was conflicted in their ability to handle

---

[1] Plaintiff filed a claim against the national union organization on September 1, 2015. That complaint was subsequently amended to replace the national union defendant with the Rider Chapter of the Union. All parties agree that the Fourth Amended Complaint relates back to the Third, filed on September 1, 2015, for the purposes of the statute of limitations.

5

opposing views of two faculty members." (Union Statement Facts ¶ 42, ECF no. 156-1, citing Blader e-mail to Kenny June 2014).[2]

This Court denied the Union's initial motion to dismiss on statute of limitation grounds in January 2017, concluding that Plaintiff might not have known that he suffered injury from the Union until March 2015 when he obtained the e-mails between Grievance Officer Halpern and Defendant Denbo. The Court now concludes that those emails do not support any finding that the Union did not represent Plaintiff rigorously because of its loyalty to Denbo, as Plaintiff alleges.

Furthermore, in the Union's renewed motion, it has shown through subsequent discovery that Plaintiff knew or should have known about whatever information he relies upon to support a claim against the Union by June 2014 at the latest, when Plaintiff sought the advice of Attorney Steven Blader. Therefore, Plaintiff would have had to file the claim against the Union by December 2014. The Court determines that the Complaint of September 1, 2015 against the Union was filed at least nine months out of time.

Count IV will be dismissed.

## II. Jurisdiction

This case was removed to federal court based on federal question jurisdiction over Plaintiff's claim against the Union under the Labor Management Relations Act. With the Union dismissed from the case, the Court no longer possesses federal question jurisdiction.

However, a district court may retain supplemental jurisdiction over remaining claims where the time and expense devoted to litigation, and/or "judicial economy, convenience, or fairness to litigants dictates." *Williams v. Newark Beth Israel Med. Ctr.*, 322 F. App'x 111, 113

---

[2] This is uncontroverted. Kenny presents only an earlier email from Blader, in April 2014. (Pl.'s Opp'n at 7, ECF No. 161).

(3d Cir. 2009) (affirming retention of jurisdiction over state-law only claims, where District Court became familiar with the matter due to the time involved in the litigation and the Court's resolution of certain discovery issues and to remand the claims to state court and start anew, after the time and resources the parties and the Court have expended, would be against the interests of judicial economy, fairness and convenience, and would invite the manipulation of the forum.").

This case has been pending for almost 5 years, much of that in state court. However, significant discovery has been completed and questions of law decided on this Court's watch. Therefore, the Court finds that it is in the interests of judicial economy and fairness to the litigants for this Court to retain jurisdiction to speedily resolve this case.

### III. Plaintiff's Motion for Summary Judgment

First, Plaintiff argues that the arbitrator's conduct constituted misconduct and duress on Plaintiff to agree to the settlement, and the settlement agreement should be rescinded on that basis. The arbitrator is not a defendant in this case, and this is not tied to Plaintiff's claims in his Complaint. There is no legal basis to sustain this claim.

Second, Plaintiff argues that he only signed the consent to the settlement agreement under duress and "no reasonable jury could find that Plaintiff signed the settlement of his own free will." Plaintiff is a lawyer and professor, with over 15 years of experience. He has pointed to no evidence of duress. He is sophisticated enough to recognize a strategic recommendation by counsel and to make his own decision. Plaintiff appears simply to have "buyer's remorse" regarding the settlement agreement and his agreement to apologize to Defendant Denbo.

Lastly, Plaintiff argues that he agreed to the settlement based on Defendant Denbo's and Department Chair Sprotzer's misrepresentations, and that a reasonable jury would not find otherwise. However, when he entered into the settlement, Plaintiff knew that he received the

7

syllabus from Chair Sprotzer and accessed Denbo's other course materials from Professor Denbo's publicly-available course site. Whether or not Chair Sprotzer admitted that he gave Plaintiff the syllabus, or the University hid the knowledge that the course materials had been available to the entire Rider University community, is irrelevant to Plaintiff's knowledge of the facts at the time of settlement. Plaintiff had the requisite knowledge to reject this settlement. Plaintiff cannot be granted the partial summary judgment he seeks merely because he regrets the outcome he agreed to.

**IV. Defendants University and Denbo's Motion for Summary Judgment**

*A. Count I – Defamation*

Plaintiff argues that Sprotzer's and Denbo's statements that he used her syllabus without permission, and Denbo's statement that this was "EXTREME unethical behavior," were libel. In order to establish a prima facie case for libel, the plaintiff must allege that defendant communicated to a third person a false statement, in writing, about plaintiff that tended to harm the plaintiff's reputation in the eyes of the community or to cause others to avoid plaintiff. *See DeAngelis v. Hill*, 180 N.J. 1, 12–13 (2004); *Petersen v. Meggitt*, 407 N.J. Super. 63, 74 (App. Div. 2009).

Count I is based on several e-mails sent by Denbo and one by Sprotzer. (Fourth Am. Compl. ¶¶ 115–118, ECF No. 1-1). Sprotzer's e-mail, described in Paragraph 53 of the Fourth Amended Complaint, was directed to Plaintiff and was only disclosed in the grievance; therefore, it was not originally published to a third party, and to the extent that a third party viewed the e-mail in the grievance process, the harms of that were settled in the settlement agreement at issue. There is no claim for defamation based on Sprotzer's e-mail.

Denbo's e-mails were directed to Plaintiff, Sprotzer, and five administrative officials and faculty. (Fourth Am. Compl. ¶¶ 45, 57). Thus, they were published to a third party and were about Plaintiff. Plaintiff claims the statements "were false and defamatory and were published maliciously and with knowledge of their falsity or with reckless disregard to whether they were true or false, and as a direct and proximate result Plaintiff's professional reputation has been greatly injured, Plaintiff suffered great mental anguish, and Plaintiff has been deprived of profits which would have otherwise accrued in the practice of teaching." (*Id.* Count I, ¶ 115).

Denbo made the following statements in e-mails addressed to some combination of Larry Newman, John Farrell, Ira Sprotzer, Ilene Goldberg, Susan O'Sullivan-Gavin, Heather McMichael, and Shaun Holland, all of whom work within the University: "I am writing to inform you about a case of EXTREME unethical behavior perpetrated by one of our priority adjuncts, Bob Kenny." "[H]e may have copied the material and may still post it." "Do we want this person teaching ethics?" "I do believe that he should no longer teach at Rider." (ECF No. 69, pp. 24–25 (Susan Denbo, e-mail message to seven recipients above, "Unbelieveable!!!", Jan. 25, 2012 at 2:30pm)). "I do believe…" is a pure statement of opinion. "He may have…" is an unsubstantiated concern and not a statement of fact. "Do we want…" is a question, not a statement of fact. A "case of extreme unethical behavior" comes closest to being a statement of fact, but without evidence of a clear rule that would make Plaintiff's use of the syllabus clearly unethical, this is a statement of Denbo's opinion. Furthermore, whether behavior is *extremely* unethical is clearly a matter of opinion. None of these statements are actionable libel.

Other e-mails imply that Denbo thought Plaintiff plagiarized her work, but did not actually make that statement or defamatory claim: "I have a copy of your course syllabus… It is identical to my syllabus—and references the material on my Blackboard—including my

9

assignments and debate materials. I am outraged!!!!! How is this possible?" (Susan Denbo, e-mail message to Robert Kenny, cc-ing Sprotzer, O'Sullivan-Gavin, Goldberg, McMichael, and Holland, "Unbelievable!!!!!", Jan. 25, 2012 at 1:50pm, ECF No. 103, p. 65). The first statement is basically true. The next are simply an expression of emotion and a question. These are not defamatory statements. Defendant's other statements are similar: "Bad timing? REALLY????????? That is the explanation?" (Denbo to Newman, Farrell, Castagne, Sprotzer, O'Sullivan-Gavin, Goldberg, McMichael, "Fwd: PMBA 8290", Jan. 25, 2012 at 17:07:46, ECF No. 103, p. 72). "I don't know which of my materials you have copied (in addition to the syllabus)… I also find it ironic that this has occurred in a class that deals with ethics." (*Id.*, copying Denbo to Kenny, "Re: PMBA 8290", Jan. 25, 2012 at 9:18am). "[T]he syllabus you distributed… [and] my syllabus. To me, they are identical… Can you let us all know what other differences there are? … Looking at someone's Blackboard page and copying someone else's syllabus to me, at least, are very different things." (Denbo to Kenny, Jan. 25, 2012 at 4:58pm, ECF No. 103, p. 69).[3]

While Denbo's statements were clearly intended to convey her displeasure and opinion that Plaintiff's actions were objectionable, none of these e-mails constitute false statements that support a claim for libel. Therefore, the Court need not address questions of First Amendment qualified privilege, damages, or defamation per se. Summary judgment will be granted on Count I.

### B. Count II – Fraud and Equitable Fraud

In order to present a prima facie case for fraud, a plaintiff must show: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of

---

[3] This e-mail does not appear to have been published to a third party.

its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. *See McCoy v. Mortgage Service Center*, 2015 WL 5542501, at *3 (D.N.J. 2015) (citing *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 173 (2005)).

Plaintiff alleges that Chair Sprotzer and Defendant Denbo concealed the information that Denbo had provided Sprotzer with her syllabus to give to the substitute professor, and Chair Sprotzer provided the syllabus to Plaintiff. Plaintiff further alleges that Professor Denbo, Department Chair Sprotzer, and the University misrepresented that Plaintiff used the syllabus and accessed the additional course materials without permission, when in fact they knew that Chair Sprotzer had given Plaintiff the syllabus and that the course materials had been available to the entire Rider University community. Plaintiff argues that Defendants hid that knowledge during the arbitration, and he would not have signed the settlement agreement had he known that Denbo gave her syllabus to Sprotzer for the professor who taught the course—Plaintiff—and that the University knew that Denbo's materials were available to the entire University community.

However, as discussed above, when he entered into the settlement, Plaintiff knew how he had received the syllabus and accessed the course materials. Defendants' behavior is irrelevant to Plaintiff's knowledge of the facts at the time of settlement. It appears to the Court that the University overreacted in this case in order to placate an overwrought tenured professor who felt imposed upon by an adjunct professor. It is also understandable that Plaintiff may have felt pressured to settle the case. However, given Plaintiff's knowledge of the facts at the time of the arbitration, Defendants' failure to disclose or acknowledge all "exonerating evidence"[4] could not

---

[4] By "exonerating evidence, the Court refers to the e-mails acknowledging that Denbo had given Sprotzer the syllabus for the benefit of the teacher who would teach her course in her absence. The Court also refers to the e-mails from Grievance Officer Halpern to the Provost on March 14 and 19, 2012, noting that "Professor Kenny assumed since he could not only read the material but also download it and then change it that Professor Denbo had chosen to make her syllabus

have induced this Plaintiff to take the settlement against his will. A reasonable jury following the law could not find otherwise. Summary judgment will be granted to Defendants on Count II.

    C. Count III – Breach of Contract

Plaintiff argues that the University's statement to New Jersey Department of Labor that Plaintiff "voluntarily agreed not to teach at Rider in the Fall [*sic*] 2012 semester as part of a resolution of a disciplinary matter" breached the settlement contract between the University and Plaintiff in which Plaintiff explicitly did not admit wrongdoing. Plaintiff seeks damages for lost unemployment compensation and damage to his reputation.

There is no source or support for a combined breach of contract defamation claim in this case. Therefore, the claim for damage to his reputation is untenable.

The University was required to answer the New Jersey Department of Labor. Plaintiff's argument that the University caused him to lose unemployment benefits because it failed to add the phrase "with no admission of wrongdoing" to its report is not an actionable breach of contract in this context. Furthermore, Plaintiff himself sought to publicize the story in the press.[5] Therefore, there remain no genuine issues of material fact on this claim, and summary judgment will be granted to Defendants on Count III.

---

widely available for use by other faculty. Unfortunately the default position in our Blackboard site at that time was that if the instructor made no choice the material was available in all ways to Rider Easypass account holders (a group numbering about ten thousand according to Carol Kondrach [Rider University's Associate Vice President of Information Technology]). It is not surprising that Professor Kenny did not know this, since it is clear that neither did Professor Denbo (or for that matter any faculty member I have asked about this). Since this issue has surfaced that element of Blackboard has been changed so that the default setting is no access outside the instructor and the students in the class. Now an instructor must make an affirmative choice to make his materials (including syllabus) available to a larger audience but until recently unbeknownst to Professor Kenny and apparently most other faculty) this material was available unless the instructor took affirmative action to block its availability." (Univ. Statement of Facts ¶¶ 72–73, ECF No. 156-1).

[5] *See* University Ex. B, Kenny Depo. 417:18–430:21; Ex. K, RiderNews article, ECF No. 156.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment will be denied, Defendant Union's motion for summary judgment will be granted, and Defendants University and Denbo's motion for summary judgment will be granted. A corresponding order will follow.

Date: 5/15/17                                                        /s/ Anne E. Thompson
                                                                                                        ANNE E. THOMPSON, U.S.D.J.